Alejandro P. Gutierrez, SBN 107688
*agutierrez@hathawaylawfirm.com*
**HATHAWAY, PERRETT, WEBSTER, POWERS,
CHRISMAN & GUTIERREZ, APC**
5450 Telegraph Road, Suite 200
Ventura, CA 93006-3577
Telephone: (805) 644-7111
Facsimile: (805) 644-8296

Daniel J. Palay, SBN 159348
*djp@calemploymentcounsel.com*
Brian D. Hefelfinger, SBN 253054
*bdh@calemploymentcounsel.com*
**PALAY HEFELFINGER, APC**
1746 S. Victoria Avenue, Suite 230
Ventura, California 93001
Tel: (805) 628-8220
Fax: (805) 765-8600
***Attorneys for Plaintiffs JEFF FULLER
and the Putative Class***

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF FULLER, an individual, on behalf of himself and other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZEP, INC., a Delaware corporation; ACUITY SPECIALTY PRODUCTS, INC., and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 4:18-cv-02672-JSW<br><br>*Assigned to: Hon. Jeffrey S. White*<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION AND *UNOPPOSED* MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing:<br>Date: August 23, 2019<br>Time: 9:00 a.m.<br>Place: Courtroom 5, Oakland Courthouse |

**TO THE COURT AND ALL INTERESTED PARTIES:**

/ / /

/ / /

PLEASE TAKE NOTICE that on Friday, August 23, 2019, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Jeffrey S. White, in Courtroom 5, 2nd floor of the U.S. District Court, Northern District located in the Oakland Courthouse at 1301 Clay Street, Oakland, California, Plaintiff JEFF FULLER will and hereby do move the Court pursuant to *Federal Rule of Civil Procedure* 23 for an Order:

(1) Preliminarily approving the Settlement between Plaintiff and Defendants dated June 19, 2019, on the grounds that its terms are sufficiently fair, reasonable, and adequate for notice to be issued to the class;

(2) For purposes of settling this lawsuit, conditionally certifying the following Class, and the included Subclass, pending final approval of the Settlement:

    (a). National Settlement Class

All persons who work or worked for the Defendants as commission-only outside salespersons in the United States of America, between the dates of May 7, 2014 and the present and who were responsible for one or more of the accounts that were reassigned between April — September 2018 (pursuant to the "2018 New Account Policy").

Members of the National Settlement Class shall be known and referred to as "Settlement Class Members" herein.

    (b). California Subclass

All persons who are members of the National Settlement Class and who work or worked for the Defendants in the State of California between the dates of May 7, 2014 and the present.

(3) Approving the form and content of the proposed Notice of Proposed Class Action Settlement and proposed plan for mailing the Notice;

(4) Appointing Alejandro P. Gutierrez of Hathaway, Perrett, Webster, Powers, Chrisman & Gutierrez, APC; and Daniel J. Palay and Brian D. Hefelfinger of Palay Hefelfinger, APC to represent the Class as Class Counsel;

(5) Appointing Jeff Fuller as Class Representative;

(6) Appointing CPT Group, Inc. as Claims Administrator;

/ / /

1    (7) Scheduling a hearing regarding final approval of the proposed Settlement, Class Counsel's

2    request for attorneys' fees and costs, and enhancement payments to the named Plaintiffs; and

3    (8) Granting such other and further relief as may be appropriate.

4

5    This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and

6    Authorities; the Declarations of Daniel J. Palay, Alejandro P. Gutierrez, and Jeff Fuller filed

7    concurrently herewith, all supporting exhibits filed herewith, all other pleadings and papers filed in

8    this action, and any argument or evidence that may be presented at the hearing in this matter.

9    This Motion is *unopposed* by Defendants.

10

11

Dated:  June 20, 2019                          PALAY HEFELFINGER, APC

12

13                                        By  _____

14                                            DANIEL J. PALAY
                                             Attorneys for Plaintiffs and the Class
15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................................. 1

**I.    INTRODUCTION.** ........................................................................................................... 1

**II.   STATEMENT OF ISSUES TO BE DECIDED.** .......................................................... 2

**III.  STATEMENT OF FACTS.** ............................................................................................ 2

**IV.   SUMMARY OF THE PROPOSED SETTLEMENT.** ................................................. 3

**A.   Settlement Terms** ......................................................................................................... 3

**1.   Settlement Class Members** ........................................................................................ 3

**2.   The Settlement Amount** ............................................................................................. 4

**3.   Net Settlement Amount** ............................................................................................. 4

**4.   Class Counsel Fees and Costs** ................................................................................... 4

**5.   Incentive Award to Named Plaintiff** ........................................................................ 4

**6.   Settlement Shares** ...................................................................................................... 5

**7.   Unclaimed Funds Escheat to State Controller's Unclaimed Property Fund.** .................. 5

**8.   Selection of CPT Group, Inc. as Claims Administrator** ......................................... 6

**9.   Class Notice** ............................................................................................................... 6

**10.    Opt-Outs and Objections to Settlement** ................................................................ 6

**11.    Scope of Release** ................................................................................................... 6

**12.    Differences Between Claims to Be Released and Claims Alleged in Complaints** ........ 6

**13.    Fair, Adequate and Reasonable Settlement** ......................................................... 7

**B.   The Allocation of the Settlement Fund Among Class Members is Fair** ...................... 7

**V. LEGAL ARGUMENT.** ..................................................................................................... 8

**A.   Certification of the Class is Appropriate** .................................................................... 8

1.    **The Settlement Class Is Sufficiently Numerous** ....................................................... 8

2.    **Questions of Law or Fact are Common to the Class** .................................................. 8

3.    **The Class Representative's Claims Are Typical of the Class.** .................................... 9

4.    **The Class Representatives and Their Counsel Will Fairly and Adequately Protect the Class Members' Interests.** ............................................................................................... 9

5.    **A Class Action is Superior to Alternative Methods of Adjudicating the Claims** ........... 10

6.    **The Court Should Appoint Named Plaintiffs as Class Representatives.** ....................... 11

7.    **The Court Should Appoint Plaintiffs' Counsel as Class Counsel** ................................ 11

B.    **The Court Should Preliminarily Approve the Settlement** ........................................... 12

1.    **The Proposed Settlement is Well Within the Range of Reasonableness** ....................... 13

2.    **Risks of Further Litigation Support Preliminary Approval.** ........................................ 14

3.    **Benefit to Class Members** ......................................................................................... 15

4.    **The Settlement is the Product of Informed, Non-Collusive Negotiation** ....................... 16

5.    **The Settlement Agreement Has No Obvious Deficiencies.** .......................................... 17

6.    **Experienced Counsel Have Determined that the Settlement is Appropriate and Fair.** 17

C.    **The Proposed Class Notice Should Be Approved** ..................................................... 18

1.    **The Proposed Notice is Accurate and Informative** .................................................... 18

2.    **The Method of Sending Notice Satisfies Due Process** ............................................... 19

3.    **The Court Should Appoint CPT Group, Inc. as Claims Administrator** ....................... 19

4.    **Proposed Schedule for Remaining Procedures** ........................................................ 19

VI.    **CONCLUSION** ....................................................................................................... 19

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Winsor*, 521 U.S. 591 (1997) ...................................................... 8

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ................................... 12

*Deaver v. Compass Bank*, 2015 WL 4999953 (N.D.Cal. 2015 ................................... 13, 17

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974) ...................................................... 19

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018)........................................................... 15

*Gardner v. GC Servs., LP,* 2011 WL 5244378 (S.D. Cal.2011) ....................................... 11

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ................................................ 8

*Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9th Cir. 1992) .......................................... 9

*Harris v. Vector Marketing Corporation,* 2011 WL 1627979 (N.D. Cal. 2011) .............. 17

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010)........................... 20

*In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078 (N.D. Cal. 2007)........................... 1, 13

*In re Wells Fargo Home Mortg. Overtime Pay Litig.,*

   527 F. Supp. 2d 1053 (N.D.Cal.2007) ...................................................................... 11

*Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal. 1988) ................................................. 17

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)..................................... 12

*Mazur v. eBay Inc.*, 257 F.R.D. 563 (N.D.Cal. 2009) ..................................................... 8

*Miller v. Ghiradelli Chocolate Company*, 2015 WL 758094 (N.D. Cal. 2015) ................. 13

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D.Cal. 1998) ................................. 8

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco,*

   688 F.2d 615 (9th Cir. 1982) .................................................................................... 12

*Rodriguez v. Hayes,* 591 F.3d 1105 (9th Cir. 2010) ......................................................... 9

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)............................................................... 19

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ....................................................... 13

*Vasquez v. Coast Valley Roofing, Inc.* 266 F.R.D. 482 (E.D.Cal. 2010)............................ 14

*Wright v. Linkus Enters., Inc.,* 259 F.R.D. 468 (E.D.Cal.2009) ........................................ 10

**Statutes**

*Fed. R. Civ. P.* Rule 23 ........................................................................................ passim

**Other Authorities**

A Conte & H. Newberg, *Newberg on Class Actions,* (4th ed.2002) ............................................... 14, 18

James Wm. Moore, Moore's Federal Practice - Civil (3d ed.) ............................................................ 13

Manual for Complex Litigation (4th ed. 2004)........................................................................................... 8

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION.

3

Pursuant to *Fed. R. Civ. P.* Rule 23, Plaintiff JEFF FULLER and the Settlement Class

4

Members move this Court for an order preliminary approving a proposed Class Action Settlement and

5

Release agreement ("Settlement" or "Agreement") entered by Plaintiff and Defendants ZEP, INC. and

6

ACUITY SPECIALTY PRODUCTS, INC. (together, the "Defendants").    The Settlement was

7

achieved with the assistance of mediator Steven J. Rottman, who oversaw extensive negotiations

8

including two (2) separate mediation sessions conducted in Los Angeles, California.

9

Pursuant to the Settlement, the initial Settlement Amount is One Million, Five Hundred

10

Thousand Dollars ($1,500,000), inclusive of all payments to Class Members, Class Counsel fees up to

11

35% of the common fund and expenses not to exceed $20,000, Class Representative incentive award

12

not to exceed $35,000, claims administration costs not to exceed $15,000, and payment to the

13

California Labor and Workforce Development Agency ("LWDA") in the amount of $15,000.

14

Further, the Settlement provides additional benefits to the Settlement Class in the form of the

15

payment of ongoing residuals to Settlement Class Members, in the form of protection of customer

16

accounts belonging to Settlement Class Members, and also in the form of the implementation of

17

several new sales programs to benefit the Settlement Class Members.    These additional, bargained-for

18

settlement terms are in addition to the initial Settlement Amount described above.

19

The Settlement readily satisfies the standard for preliminary approval – it is within the range of

20

possible approval to justify sending notice to Class Members and scheduling final approval

21

proceedings.  *See In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

22

Accordingly, Plaintiffs seek an order: (1) granting preliminary approval of the Settlement; (2)

23

certifying the Class for settlement purposes only; (3) approving the manner and forms of giving notice

24

to the Class; (4) appointing Hathaway, Perrett, Webster, Powers, Chrisman & Gutierrez, APC, and

25

Palay Hefelfinger, APC, to represent the class as Class Counsel; (5) appointing JEFF FULLER as

26

Class Representative; (6) appointing CPT Group as Claims Administrator; and (7) establishing a

27

timetable for final approval of the Settlement.

28

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## II.   STATEMENT OF ISSUES TO BE DECIDED.

1. Whether the proposed Class Action Settlement and Release merits preliminary approval;

2. Whether the Court should preliminarily certify the Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

3. Whether Plaintiff Jeff Fuller should be appointed as Class Representative;

4. Whether Plaintiff's counsel, Hathaway, Perrett, Webster, Powers, Chrisman & Gutierrez, APC, and Palay Hefelfinger, APC, should be appointed as Class Counsel;

5. Whether the Court should approve CPT Group, Inc. as Claims Administrator; and

6. Whether the Court should approve notice to the Settlement Class and set a date for a final approval hearing.

## III.   STATEMENT OF FACTS.

Plaintiff and the Settlement Class Members (together, referred to as the "Plaintiffs" in this brief) work/ed as commission-only outside salespersons in the United States of America, between the dates of May 7, 2014 and the present for defendant ZEP, Inc., which offers various cleaning and chemical solutions for retail, food & beverage, industrial & institutional, and vehicle care customers. In this action, the Plaintiffs allege, *inter alia*, that Defendants violated California state wage and hour laws, and generally applicable principles of contract law (including the duty of good faith and fair dealing), with regard to the payment of commission and the taking of accounts from Class Members. (Palay Decl., ¶ 5). Specifically, Plaintiff alleges that Defendants unlawfully took accounts from its commission sales representatives in violation of both the law and in violation of its contracts with the Class. (*Id.* at ¶ 5-6). The Defendants has denied the allegations of the Plaintiff. (Dkt. No. 38).

The parties first attended private mediation, presided over by Steven J. Rottman, on November 20, 2018. Thereafter, the parties continued negotiating. A further in-person meeting between the parties and all counsel was conducted on February 14, 2019 in Los Angeles. Thereafter, a second mediation session with Mr. Rottman took place on April 1, 2019. A memorandum of understanding was executed at the second (final) meeting, and the parties completed a long-form Joint Stipulation of Settlement thereafter. (Exhibit to the Palay Declaration) (the "Settlement" or "Joint Stipulation").

Before engaging in settlement discussions, Plaintiffs and Defendants engaged in extensive discussions and an exchange of detailed information and class data. This voluntary interchange enabled the parties to conduct meaningful and intense negotiations with a keen eye toward the strengths and weaknesses of their positions and the value of the claims. Sales and revenue data, on a granular, account-specific basis, were reviewed and analyzed. All negotiations were conducted at arm's length and were facilitated by a highly experienced and esteemed employment mediator, Steven J. Rottman, in Los Angeles, California. The within parties agreed to the Settlement only after protracted negotiations over the span of several months, from November 2018 through April of 2019. (Palay Decl., ¶ 8-11).

The negotiated Settlement in this represents an excellent value for the Class Members. As detailed herein, the Settlement is the best possible outcome of this matter given the substantial risks and delays associated with litigation, and given the business risks and factors facing the Defendants as well as the Settlement Class Members. Even years of litigation would be unlikely to yield a better result. (Palay Decl., ¶ 17-22).

On June 19, 2019, the parties executed a formal Joint Stipulation of Class Action Settlement and Release ("Settlement") setting forth the terms agreed to in settlement discussions. The Settlement is filed with this Motion, attached to the Declaration of Daniel J. Palay in support.

## IV.    SUMMARY OF THE PROPOSED SETTLEMENT.

### A.    Settlement Terms

The terms of the Settlement are set forth in the Joint Stipulation of Class Action Settlement and Release attached to the Palay Declaration as Exhibit 1, and incorporated herein by reference. The principal terms are:

#### 1.    Settlement Class Members

The Settlement Class consists of: All persons who work or worked for the Defendants as commission-only outside salespersons in the United States of America, between the dates of May 7, 2014 and the present and who were responsible for one or more of the accounts that were reassigned between April — September 2018 (pursuant to the "2018 New Account Policy"). Within the Settlement Class is a California-based employee subclass (the "California Subclass"), which is defined

in the Settlement as "[a]ll persons who are members of the National Settlement Class and who work or worked for the Defendants in the State of California between the dates of May 7, 2014 and the present."  (Settlement, at § I, ¶ Q(1) & (2)).

### 2. The Settlement Amount

Under the terms of the Settlement, Defendants agree to pay a lump-sum non-reversionary payment of $1,500,000.00.  This Settlement Amount is inclusive of all payments to Class Members under the terms of the Settlement; PAGA-designated penalties in the total amount of $20,000; Class Counsel fees up to 35% of the Gross Settlement Amount and expenses not to exceed $20,000, the Class Representative Incentive Award up to $35,000, claims administration costs of $12,500, and all federal, state and local taxes.  In addition to the Gross Settlement Amount, ZEP agrees to pay the employer's share of any taxes owed for wages paid to the Class Members (employer's share of FICA).  (Settlement, § XV).

### 3. Net Settlement Amount

After deducting the Class Counsel fees and expenses, the Class Representative incentive award, the LWDA payment, and the class administration expenses, the remainder of the Gross Maximum Settlement Amount (the "Net Settlement Amount") will be divided and distributed to Class Members.  (Settlement, §§ I.(K), (L); X).

### 4. Class Counsel Fees and Costs

Defendants do not object to an award of attorneys' fees to Class not to exceed 35% of the Settlement Amount, or $525,000.00, and actual litigation costs incurred up to $20,000.  (Settlement, § XIII; *see also,* Palay Decl., ¶ 38-41).  Class Counsel will present the rationale and facts supporting their fee request, in their final fee motion.  (*Id.*)

### 5. Incentive Award to Named Plaintiff

The Named Plaintiff, JEFF FULLER, will seek an incentive award of $35,000 in recognition of is significant time, effort, travel and advocacy in this matter on behalf of the Settlement Class.  Defendants will not object to the requested incentive award to FULLER up to the amount of $35,000.  The settlement of this Action is, of course, <u>not</u> contingent on the Named Plaintiff's receipt of any specific incentive award amount out of the Maximum Settlement Amount; any unapproved

portion shall revert into the Net Settlement Amount to be distributed between the participating Settlement Class Members on a pro-rata basis. (Settlement, § XIV).

### 6. Settlement Shares

Each Class Member will be entitled to receive a portion of the Net Settlement Amount, determined by converting the Net Settlement Amount into individualized payments. The Claims Administrator will receive data from Defendants following preliminary approval, identifying the total amount of commissions attributable to all accounts that were reassigned from Class Members by Defendants as part of its 2018 New Account Policy, for the Commission Measuring Period (monetary amount of commissions earned from accounts reassigned by Defendants for the period of March 2017 through March 2019), which shall be the "Total Reassigned Commission Value." In addition, Defendant shall provide data which identifies on an individual basis which of these commissions are attributable to each Settlement Class Member, based on how the accounts were previously aligned (the "Individual Commission Value").

An "Individual Settlement Payment" for each Class Member will then be calculated by determining the Settlement Class Member's fraction of the Net Settlement Fund, which shall be the Individual Commission Value for each class member divided by the Total Reassigned Commission Value (*i.e.,* pro rata based on the actual commission loss allegedly sustained by each Settlement Class Member). *For example*: If the data show that the reassigned accounts formerly aligned to the individual (*i.e.,* the Individual Commission Value) had earned $5,000.00 during the Commission Measuring Period, and the Total Reassigned Commission Value is $650,000, and the Net Settlement Fund for the class was $1,000,000.00, that individual would receive [$5,000] ÷ [$650,000] × [$1,000,000], or $7,692.31, as his or her Individual Settlement Payment.

### 7. Unclaimed Funds Escheat to State Controller's Unclaimed Property Fund.

The Settlement does not include any *cy pres* awardee. Instead, any check not cashed within 180 calendar days will be void. Within 30 days after the check stale date, the money from the uncashed checks will escheat to the State of California Controller's Unclaimed Property fund, in the name of the Class Member. (Settlement, § XI.(D)).

### 8.  Selection of CPT Group, Inc. as Claims Administrator

The parties have agreed that CPT Group, Inc. ("CPT") will act as Claims Administrator.  Class Counsel have obtained a quotation from CPT of $12,500.  (Settlement, § IV).

### 9.  Class Notice

The parties have agreed on a Notice of Proposed Class Action Settlement and Fairness Hearing to be mailed to the Class Members, which is attached as Exhibit "1" to the Settlement.  The Notice of Settlement informs the Class Members of the essential terms of the Settlement and their right to object thereto.  The Notice Packet will be mailed by First Class Mail by the Claims Administrator, who will perform a skip-trace on returned mail and re-mail the Class Notice to Class Members for whom new addresses are found.  (Settlement, § IX.(A)).

### 10. Opt-Outs and Objections to Settlement

Class Members are not required to sign a claim form to participate.  Class Members will have sixty (60) calendar days after the date that the Claims Administrator mails the Class Notice to submit a written opt-out notice.  In addition, Class Members who wish to object to the Settlement shall have the same amount of time for objecting to the Settlement, including setting forth the grounds for any such objection.  (Settlement, § IX.(B), (C)).

### 11. Scope of Release

In exchange for Defendants' immediate payment of wages and penalties, and the implementation of new account policies and programs, and the payment of future commissions, Class Members will release Defendants from all claims, including claims for wages and related penalties and benefits that were alleged in the Action, or which could have been alleged in the Action based on the facts alleged therein during the Class Period. (Settlement, § VII).  All Class Members are enjoined from seeking any monetary relief/award by filing or initiating any other proceedings regarding the claims released under the Settlement. (Settlement, *Id.*).  In addition, the Named Plaintiff will provide a complete and general release of all known and unknown claims arising out of his employment as of the date of final approval.  (*Id.*).

### 12. Differences Between Claims to Be Released and Claims Alleged in Complaints

Pursuant to the Court's procedural guidelines, Plaintiffs submit that there are no differences in

the claims to be released and the claims alleged in the operative complaint.  As set forth in the Joint Stipulation for Class Action Settlement and Release, named Plaintiff and the Class will release Defendants from "any and all claims against Defendants, their respective subsidiaries, affiliates, predecessors or successors in interest, or the officers, directors, shareholders, employees, attorneys, agents, assigns, insurers, re-insurers, of any of them, on any basis whatsoever including but not limited to federal, state, or local law, that were alleged in the Litigation or that could have been alleged in the Litigation based on the facts asserted in the Operative Complaint, including but not limited to: 1) all claims concerning the reassignment of accounts during the Settlement Period; 2) all claims for the breach of contract, and for any breach of the duty of good faith and fair dealing; 3) all claims for the failure to pay commissions owed pursuant to California or any similar state law in any state in which a Settlement Class Member resides, including but not limited to attendant civil penalties pursuant to the *Labor Code* Private Attorneys' General Act of 2004; and (4) unjust enrichment."  (Settlement, § VII.(A)).

### 13. Fair, Adequate and Reasonable Settlement

The Settling Parties believe and agree that the Settlement, which was reached after extensive negotiations, is a fair, adequate, and reasonable resolution of the Action and have arrived at the Settlement in arms-length negotiations, taking into account all relevant factors, present and potential.

### B.  The Allocation of the Settlement Fund Among Class Members is Fair

The Settlement represents a compromise of highly disputed claims.  (Settlement, § II; *see also,* D.E. 37 and 38).  Prior to settling this matter, Plaintiff and his counsel valued the "realistic range" of provable damages (*i.e.,* the commission loss directly traceable to reassigned accounts) at between $600,000-700,000. (Palay Decl., ¶ 31).  Given the risks of litigation, including the uncertainty over issues such as provable vs. "speculative" commission losses, whether arbitration agreements signed by sales representatives would be enforced, and the uncertainty of how damages would be calculated on reassigned accounts, the Settlement of $1,500,000.00 initially, <u>plus</u> ongoing commissions and account policy changes, represents a reasonable compromise.

The average payment (measured by dividing among the Class Members the Net Settlement Amount) will be $3,088.24 for each Class Member, separate from the other consideration provided by

1    the Settlement Agreement.  The average Individual Commission Loss attributable to each Settlement

2    Class Member is approximately $2,259.52, and therefore the payment contemplated by the Settlement

3    is both appropriate and reasonable.  (Palay Decl., ¶ 33-34).

4    **V. LEGAL ARGUMENT.**

5        **A.  Certification of the Class is Appropriate**

6          Before granting preliminary approval of a settlement, the Court must determine that the

7    proposed settlement class is a proper class for settlement purposes.  *See generally* Fed.R.Civ.P. 23(e);

8    Manual for Complex Litigation (4th ed. 2004) §21.632.  Courts routinely and properly certify classes

9    for settlement purposes only and the proposed certification of the class is entirely consistent with the

10   applicable authorities.  *Amchem Prods. Inc. v. Winsor*, 521 U.S. 591, 619 - 29 (1997).  Certification of

11   a class under Rule 23 requires numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P.

12   23(a).  All four elements are satisfied here.

13       **1.  The Settlement Class Is Sufficiently Numerous**

14         The numerosity requirement mandates that the class be "so numerous that joinder of all

15   members is impracticable."  Fed.R.Civ.P. 23(a)(1).  In addition, the class should be "ascertainable,"

16   *Mazur v. eBay Inc.*, 257 F.R.D. 563, 667 (N.D.Cal. 2009), meaning that the class definition must be

17   "definite enough so that it is administratively feasible for the court to ascertain whether an individual

18   is a member," *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D.Cal. 1998).  The parties

19   have jointly identified through the employment records the identities of the Settlement Class members.

20         Here, based on its records, Defendants estimate that 289 individuals in the Class were

21   employed by Defendants during the Class Period.  (Settlement, ¶ XVII.(K)).  This is facially sufficient

22   to satisfy Rule 23's numerosity and ascertainability requirements.  *See Hanlon v. Chrysler Corp.,* 150

23   F.3d 1011, 1019 (9th Cir. 1998) ("The prerequisite of numerosity is discharged if 'the class is so large

24   that joinder of all members is impracticable.'").

25       **2.  Questions of Law or Fact are Common to the Class**

26         The commonality requirement requires that there be "questions of law or fact to the class."

27   Fed.R.Civ.P. 23(a)(2). "A class has sufficient commonality 'if there are questions of fact and law

28   which are common to the class." *Hanlon*, 150 F.3d at 1019.  The commonality requirement should be

"construed permissively," meaning that "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

Here, all outside sales representatives in the Class were subject to the same account policies and practices (*i.e.,* account re-assignments) of Defendants, which formed the basis for the instant Action. Indeed, by the Defendants' act of instituting new account policies and programs affecting the Settlement Class members on a class-wide basis, its practices and policies have been shown to be common to the Class. (Palay Decl., ¶ 4 and D.E. 37). As such, Plaintiffs meet the commonality requirement.

### 3. The Class Representative's Claims Are Typical of the Class.

The next requirement of Rule 23(a) is typicality, which focuses on the relationship of facts and issues between the class and its representatives. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similarly injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2010) (*quoting Hanlon,* 150 F.3d at 1020).

Here, Plaintiff represents all persons who work or worked for the Defendants in the United States as an outside salesperson at any time within four (4) years prior to the filing of the Action, who has had one or more accounts obtained by the salespersons taken from them by Defendants. (D.E. 37, at ¶ 14). Accordingly, Plaintiffs' claims are typical of those of the Class Members.

### 4. The Class Representatives and Their Counsel Will Fairly and Adequately Protect the Class Members' Interests.

Rule 23(a)(4) requires that the Class Representative "fairly and adequately protect the interests of the class." Rule 23(g) requires the Court to consider Class Counsel's prior experience, knowledge

and ability to properly represent the Class.

Here, Plaintiff FULLER will fairly and adequately protect the interests of the Class Members. Plaintiff has no conflicts of interest with the other Class Members, and does not seek any different relief than that he seeks on behalf of Class Members. Additionally, Plaintiff has been totally committed to the action, and has devoted extensive time and resources to assisting counsel with the action, providing documents, reviewing pleadings and attending multiple sessions for negotiations in Los Angeles (traveling from the Bay Area to do so). Plaintiff also assisted with preparation for the two mediation sessions in the case, and also participated in another in-person conference of the parties in Los Angeles in February of 2019. (Palay Decl. 23-26). Plaintiff has no interests that are antagonistic to other Class members and, in fact, shares a strong and identical interest in protecting Class Members and the future of the outside sales representatives. (Palay Decl., ¶ 26; *see also,* Fuller Declaration, filed concurrently herewith).

Further, Class Counsel are well qualified and, as detailed in the supporting declarations filed with this motion, have substantial experience litigating and settling complex employment law actions involving the same issues raised by this case, including prior class action experience with these same Defendants. (Palay Decl., ¶¶ 3, 27). Accordingly, the adequacy requirement is satisfied.

### 5. A Class Action is Superior to Alternative Methods of Adjudicating the Claims

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). These provisions are referred to as the "predominance" and "superiority" requirements. *See Hanlon,* 150 F.3d at 1022–1023.

As discussed, Defendants' implementation of new account policies, resulting in the alleged unlawful taking of sales reps' accounts, applied uniformly to all Settlement Class Members. Claims based on this type of commonly-applied policy are generally sufficient for purposes of satisfying the requirements of Rule 23(b)(3). *See, e.g., Wright v. Linkus Enters., Inc.,* 259 F.R.D. 468, 473 (E.D.Cal.2009) (finding predominance, despite minor factual difference between individual class members, where the case involved alleged policies that affected class members' compensation,

10

expense reimbursement, and other workplace practices); *In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 527 F.Supp.2d 1053, 1065–1068 (N.D.Cal.2007) (finding predominance where, as a general matter, the defendant's policy and practice regarding compensation and exemption was uniform for all putative class members); *Gardner v. GC Servs., LP,* 2011 WL 5244378, at *5 (S.D. Cal.2011) (finding that Rule 23(b)(3) was satisfied where "the claims stem from GC Services' alleged uniform policy of requiring account representative to perform certain pre-shift, post-shift, and lunch time tasks without compensation...").

In this matter, the Settlement Class Members were affected by common policies, and maintained common claims based upon the Defendants' uniform account re-assignment policies which affected their pay. Accordingly, conditional class certification under Rule 23(a) and Rule 23(b)(3) is warranted.

### 6. The Court Should Appoint Named Plaintiffs as Class Representatives.

Because Plaintiff JEFF FULLER will fairly and adequately protect the interests of the Class, and because he has no conflicts of interest with the other Class Members, as previously discussed in subparagraph 4, the Court should appoint FULLER as Class Representative for purposes of the Settlement.

### 7. The Court Should Appoint Plaintiffs' Counsel as Class Counsel

"An order certifying a class action . . . must appoint class counsel under Rule 23(g)." Rule 23(c)(1)(B). Courts must consider counsels' work in identifying or investigating claims; counsel's experience in handling the types of claims asserted; counsel's knowledge of applicable law; and the resources counsel will commit to representing the class. *Fed. R. Civ. P.* 23(g)(1)(A).

Here, the work that Plaintiffs' counsel performed in this matter, as well as in prior class litigation and multiple arbitrations involving these same Defendants, provides a substantial basis for the Court's finding that they satisfy Rule 23(g)'s criteria. For instance, Class Counsel identified and investigated the Plaintiffs' claims, negotiated new contract and monetary settlement terms over the course of several months in this action, interviewed hundreds of class members, analyzed thousands of sales records, attended two mediations and an additional in-person negotiation session, among many other tasks in the case. In addition, Class Counsel obtained substantial relief for many of the same

Settlement Class Members in this matter, through prior litigation involving the same Defendants in the wage/hour matters of *Britto v. ZEP* (Alameda County Case No. VG-10553718), *Aguilar v. ZEP* (USDC Case No. 13-CV-00563-WHO) and several related arbitrations that were "spinoff cases" deriving from the same operative facts as in *Britto* and *Aguilar.* (Palay Decl., ¶ 3). In other words, Class Counsel has past experience litigating wage/hour claims, on multiple fronts, and resolving and/or trying them, against these very same Defendants.

In this case, Plaintiffs' counsel worked on identifying the Class, investigating Defendants' policies and practices, and researching the legal issues both substantive (*i.e.*, the alleged unlawful usurpation of commission accounts) and procedural (*i.e.*, the arbitration agreements executed by some Class Members, but not others). Counsel have vast experience handling wage and hour cases, including matters against these Defendants, know the applicable law, and are committed to representing the Class. (Palay Decl., ¶ 27-30). Accordingly, the Court should appoint Alejandro P. Gutierrez of Hathaway, Perrett, Webster, Powers, Chrisman & Gutierrez, APC; Daniel J. Palay and Brian D. Hefelfinger of Palay Hefelfinger, APC to represent the class as Class Counsel for purposes of the Settlement.

**B. The Court Should Preliminarily Approve the Settlement**

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Settlements minimize potentially substantial litigation expenses for both sides and conserves judicial resources. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *see also Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

A class action settlement must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). At the preliminary approval stage, the Court may grant preliminary approval of a settlement and direct notice to the class if the settlement (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *See*

*In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D.Cal. 2007).

Furthermore, courts must give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the produce of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a how, is fair, reasonable and adequate to all concerned." *Hanlon,* 150 F.3d at 1027.

Thus, preliminary approval does not require the Court to make an in-depth and final determination that a settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the Class. *See* 5 James Wm. Moore, Moore's Federal Practice - Civil § 23.165[3] (3d ed.). Moreover, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits. *Officers for Justice*, 688 F.2d at 625.

### 1. The Proposed Settlement is Well Within the Range of Reasonableness

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." *Deaver v. Compass Bank*, 2015 WL 4999953, *9 (N.D. Cal. 2015). When determining the value of a settlement, courts consider both the monetary and nonmonetary benefits that the settlement offers. *See*, *e.g. Staton v. Boeing Co.*, 327 F.3d 938, 972 – 74 (9th Cir. 2003); *Miller v. Ghiradelli Chocolate Company*, 2015 WL 758094 (N.D. Cal. 2015).

Here, the Settlement is well within the reasonable range. Plaintiffs' damages models were based on the actual commissions generated by accounts which it was alleged that Defendants unlawfully re-assigned away from Settlement Class Members*, post* re-assignment. The data revealed that these commissions totaled approximately $653,000 for the period of April 2018 through April of 2019. (Palay Decl., ¶ 34). The Settlement Agreement provides for a reasonable range of compensation for the alleged unlawful account reassignments by doing two things:

First, the Settlement creates a gross settlement fund of $1,500,000 for approximately 289 total Class Members, to provide an up-front cash payment for alleged commission losses, together with attorneys' fees and costs, administrative costs, the enhancement awards to the names Plaintiffs, and a payment to the LWDA. After payment of the requested litigation costs, administrative costs, service payment, LWDA payment and attorneys' fees, the net settlement fund for the cash payment is still estimated to exceed the *actual* commissions generated by the accounts that were re-assigned by the Defendants to-date. (Palay Decl., ¶ 33-34).

Second, the Settlement terms require that Defendants continue paying commissions generated by the reassigned accounts on an ongoing, go-forward basis. (Settlement, at § XII.A.). This includes 100% commission residuals for 5 years, and then 50% thereafter, for the duration of employment of any Settlement Class Member. As such, the Settlement provides for the monetary recovery to Settlement Class Members, over time, that is roughly 6X the value of the alleged wrongfully taken commissions, plus another 50% of the value indefinitely thereafter (so long as employed). (Palay Decl., ¶¶ 19, 40).

Finally, the Settlement (at § XII. B.-D.) provides additional benefits to the Settlement Class Members that remain working at Defendants, separate and apart from the monetary value detailed above. All in all, this comprehensive settlement package is a substantial recovery to the Class that easily falls within the range of reasonableness for settlement approval.

### 2. Risks of Further Litigation Support Preliminary Approval.

A "relevant factor" that courts must consider in contemplating a potential settlement is "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." *Vasquez v. Coast Valley Roofing, Inc.* 266 F.R.D. 482, 489 (E.D.Cal. 2010). Thus, courts "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Id.* "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 A Conte & H. Newberg, *Newberg on Class Actions,* § 11:50 at 155 (4th ed.2002).

Here, the Settlement Class Members interests are confronted by both procedural and

substantive risk factors in the litigation, which Class Counsel has analyzed and discussed with the Plaintiff and many, many other Class Members.  For example, many of the Settlement Class Members were asked to execute an arbitration agreement with an express class action waiver as part of their employment contract.   (Palay Decl., ¶ 20).   While Plaintiffs would attempt to argue against enforceability of such agreements, the U.S. Supreme Court decision in *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) presents a major roadblock to such argument.  In addition, while Plaintiffs could proceed instead by filing hundreds of individual arbitrations for those Settlement Class Members that have signed arbitration agreements, such an outcome presents numerous procedural challenges and inefficiencies that would tax the resources of all the litigants, the arbitral forum, and other involved parties.   Furthermore, in Class Counsel's reasoned analysis, it is unlikely that proceeding with arbitrations *en masse* would result in better individual outcomes than what the proposed Settlement offers herein.  (Palay Decl., ¶ 22).

Also, proceeding with litigation (class litigation for those Settlement Class Members who have not signed arbitration agreements; mass arbitrations for those who have) would impose ongoing, substantial additional expenditures of time and resources, including substantial additional preparation and discovery, such as depositions of experts, the presentation of percipient and expert witnesses at trial, voluminous documentary evidence and the preparation and analysis of expert reports.  Further, the Settlement was agreed to in light of Plaintiffs' recognition that, should they surmount the various hurdles of prosecuting their case, Defendants would undoubtedly appeal orders relating to class certification, arbitration, and/or the substantive merits of the case.

In contrast, resolving the case by means of an early, negotiated settlement will yield a prompt, certain, and very substantial recovery for the Class Members.  Such a result will benefit the parties and the court system.   Particularly given the risks, costs and delays that would be associated with maintaining ongoing class litigation and mass arbitrations, it was and is Class Counsel's belief that this Settlement is a fair resolution of highly disputed claims and is a significant achievement in obtaining class-wide relief.

### 3.  Benefit to Class Members

The terms of the Settlement provide substantial monetary benefits (immediate and future) to

Class Members, as well as substantial non-monetary benefits in the form of new sales programs and practices available to the Settlement Class Members that remain employed by Defendants, and, accordingly, this strongly supports granting preliminary approval in this matter. Class Counsel analyzed the potential monetary value of Plaintiffs' claims, including the legal risk factors present in the litigation and in prospective individual arbitrations that may also have resulted. Based on data provided by Defendants, Class Counsel calculated the potential damages Plaintiffs might have obtained had they obtained judgment(s) or awards against Defendants through litigation or arbitrations. In view of the legal uncertainties that faced Plaintiffs, it is Class Counsel's unreserved judgment that this Settlement is an excellent result for each of the Settlement Class Members.

### 4. The Settlement is the Product of Informed, Non-Collusive Negotiation

This Settlement was reached only after months of negotiation (including three separate in-person meetings conducted in Los Angeles), after interviewing more than a hundred class members, after analyzing thousands of lines of sales data, and after attending two separate mediation sessions. (Palay Decl., ¶ 8-13). Accordingly, the Agreement is the result of intensive arms-length negotiation, including multiple mediation sessions as well as extensive negotiations between the parties on their own. (Palay Decl., ¶ 14). Class Counsel conducted confirmatory discovery as part of preparing for and completing settlement negotiations, which included the production of detailed account and sales data of the Defendants over a multiple-year period, down to every customer and transaction. (Palay Decl., 12).

As a result, from November of 2018 through April of 2019, over the course of two mediation sessions, an additional in-person meeting of the parties and counsel, and extensive back-and-forth in written and other forms, the Parties were able to conduct arms'-length settlement negotiations in this matter. *Id.* Through the mediation process, the Parties negotiated extensive monetary (immediate and future) and non-monetary terms applicable to the Settlement Class.

The time and effort spent on settlement negotiations, as well as the time spent with the mediator, Steven J. Rottman, in the settlement process, militate in favor of preliminary approval of the proposed Settlement, as they strongly indicate there was no collusion. *See Hanlon*, 150 F.3d at 1029 (district court properly relied on mediator "as independent confirmation that [portion of settlement]

16

1    was not the result of collusion or a sacrifice of the interests of the class.")

2        **5.   The Settlement Agreement Has No Obvious Deficiencies.**

3        The Court must next consider "whether there are obvious deficiencies in the Settlement

4    Agreement."  *Deaver v. Compass Bank*, 2015 WL 4999953 (N.D.Cal. 2015), *citing Harris v. Vector*

5    *Marketing Corporation,* 2011 WL 1627979 (N.D. Cal. 2011).  Here, there are no obvious deficiencies.

6    Class Members will release only those claims that could arise from the allegations of the pleadings.

7    The Parties have also carefully constructed a formula for the initial lump-sum payments to Class

8    Members, which is based on precise sales data reflecting actual commission losses, to ensure an

9    equitable distribution of the initial settlement funds.  The ongoing, "residual" payments and new

10   account programs will further benefit all Settlement Class Members for the duration of their

11   employment with the Defendants.  No unclaimed funds will revert to Defendants; rather they will be

12   held for the Class Members (or their beneficiaries) by the State of California Controller's Unclaimed

13   Property division.  Additionally, the Class Notice provides all required information to Class Members

14   in an easy-to-read format, as discussed above.

15       The attorney's fee provision permits Plaintiffs' Counsel to apply for fees and costs not to

16   exceed 35% of the gross settlement fund (which is a much lower percentage of the total monetary

17   value of the overall settlement); the Settlement is not contingent upon the Court approving Counsel's

18   application.  (Settlement, § XIII).

19       In addition, the Settlement does not unfairly grant preferential treatment to any Class Member;

20   as stated, payments to Class Members will be based on the commissions they actually lost during the

21   class period.  The agreed upon enhancement award for Plaintiff is in line with, if not less than, awards

22   in other cases in California District Courts, particularly in light of the extensive participation and

23   investment of time a personal resources by the Named Plaintiff in this matter.

24       **6.   Experienced Counsel Have Determined that the Settlement is Appropriate and Fair.**

25       When deciding whether to give preliminary approval to a settlement, the Court is entitled to

26   give considerable weight to the opinion of counsel.  *Kirkorian v. Borelli*, 695 F.Supp. 446, 451 (N.D.

27   Cal. 1988).  Here, Class Counsel are experienced in wage-and-hour class actions, having been certified

28   by numerous state and federal courts as adequate and competent class counsel in many wage and hour

class actions, including prior litigation with the Defendants herein. (Palay Decl., ¶ 3). Counsel for Defendants, similarly, have extensive experience in complex class actions. They have vigorously defended and advocated for Defendant throughout this action, as well as during the arms-length negotiations spanning months and months. (Palay Decl., ¶ 8-14, 27). Counsel on both sides share the view that the proposed Settlement is fair, reasonable and adequate and in the best interests of the Class Members.

### C. The Proposed Class Notice Should Be Approved

Rule 23(e)(1)(B) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Rule 23(e) requires that notice of a proposed settlement inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. *Newberg on Class Actions* § 8.32, at 262-68. The notice must also indicate an opportunity to opt out, that the judgment will bind all class members who do not opt out, and that any member who does not opt out may appear through counsel. Fed.R.Civ.P. 23(c)(2).

### 1. The Proposed Notice is Accurate and Informative

Plaintiffs request approval of the proposed Notice of Proposed Class Action Settlement and Fairness Hearing attached hereto ("Class Notice," Ex. 1 to Settlement Agreement). The Class Notice meets all of the requirements of Rule 23(e): it identifies the Plaintiffs and the Defendants and describes the lawsuit and the Class in a straightforward manner; succinctly describes the essential terms of the proposed Settlement, and identifies all parties against whom claims are being released; provides Class Members with information on how to opt-out of the Class or to object to the Settlement and provides all applicable deadlines for such action; and informs Class Members that if they do not exclude themselves from the Class, and the Settlement is approved, they will be bound by the resulting judgment.

In addition, the Class Notice instructs Class Members to contact Class Counsel to obtain more detailed information and provides information regarding counsel's fee and expense application. *Id.* Thus, the Class Notice will provide the necessary information for Class Members to make an informed

decision regarding the proposed Settlement.

### 2. The Method of Sending Notice Satisfies Due Process

As a general rule, due process requires individualized notice where the names and addresses of class members "may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173, 177 (1974).  As courts have repeatedly held, notice by direct mail or e-mail and publication are often the "best practicable" notice under the circumstances.  *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994).

Here, the proposed Settlement provides for direct mail notice to each Settlement Class Member based on current/most-recent contact information provided by Defendants.  The notice procedure here more than sufficiently satisfies all due process requirements.

### 3. The Court Should Appoint CPT Group, Inc. as Claims Administrator

The parties propose that, subject to the Court's approval, CPT Group, Inc. administer the Settlement.  CPT Group, Inc. has served as the Claims Administrator for many other class action settlements handled by Class Counsel, and has always performed their administration duties professionally and efficiently.

### 4. Proposed Schedule for Remaining Procedures

Plaintiffs propose the following schedule for final approval, assuming preliminary approval on August 23, 2019:

| | |
|---|---|
| Preliminary Approval hearing | August 23, 2019 |
| Defendants to provide Class contact information to Claims Administrator | September 14, 2019 |
| CPT Group to mail notice | *by no later than* October 5, 2019 |
| Undeliverable Class Notices without forwarding address to be re-mailed to more current address after skip-trace search | *as received, during* October 2019 |
| Undeliverable Class Notices with a forwarding address re-mailed to forwarding address | *as received, during* October 2019 |
| Last day for Class Members to submit opt-out requests (assuming Aug. 16th mailing) | December 4, 2019 |
| Last day for Claims Administrator to provide Counsel for Defendants with list of Class Members who have timely submitted valid requests for Exclusion | December 11, 2019 |

| Last day for Class Counsel to file motion for attorneys' fees and costs (at least 14 days before objection deadline, *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010). | November 20, 2019 |
|---|---|
| Last day for Class Members to object to the Settlement | December 4, 2019 |
| Class Counsel file motion for final approval | *by no later than* January 3, 2020 |
| Final Approval hearing | January 10, 2020 |

This schedule can be adjusted, depending on the date that the Court grants preliminary approval (e.g., if granted on the papers prior to the hearing date, or after submission).

## VI.    CONCLUSION

With this Settlement, Plaintiffs have secured a substantial monetary recovery, including an up-front payment of $1,500,000 for approximately 289 Class Members, in addition to ongoing beneficial changes and commission payments to be made going forward by the Defendants.  Plaintiff and Class Counsel therefore respectfully request that this Court enter an order: (1) preliminarily approving the proposed class action settlement; (2) provisionally certifying the Class of all persons who work or worked for the Defendants as commission-only outside salespersons in the United States of America, between the dates of May 7, 2015 and the present; (3) approving the manner and form of class notice; (4) appointing named plaintiff JEFF FULLER as the Class Representative; (5) appointing Alejandro P. Gutierrez of Hathaway, Perrett, Webster, Powers, Chrisman & Gutierrez, APC; and Daniel J. Palay and Brian D. Hefelfinger of Palay Hefelfinger, APC as Class Counsel for purposes of the Settlement; (6) appointing CPT Group, Inc. as Claims Administrator; and (7) setting a final fairness hearing.

Dated:  June 20, 2019          PALAY HEFELFINGER, APC


                          By  _____
                              DANIEL J. PALAY
                              Attorneys for Plaintiffs and the