Alejandro P. Gutierrez, SBN 107688
**HATHAWAY, PERRETT, WEBSTER,**
**POWERS, CHRISMAN & GUTIERREZ**
A Professional Corporation
200 Hathaway Building
5450 Telegraph Road
Post Office Box 3577
Ventura, CA  93006-3577
Telephone: (805) 644-7111
Facsimile: (805) 644-8296
E-mail:  agutierez@hathawaylawfirm.com

Daniel J. Palay, SBN 159348
Michael A. Strauss, SBN
Brian D. Hefelfinger, SBN
**STRAUSS & PALAY, APC**
121 N. Fir Street, Suite F
Ventura, CA  93001
Telephone: (805) 641-6600
Facsimile: (805) 641-6607

Attorneys for Plaintiff Jeff Fuller and the Settlement Class

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF FULLER, an individual, on behalf of himself and other persons similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>ZEP, INC., a Delaware corporation; ACUITY SPECIALTY PRODUCTS, INC., and DOES 1 through 100, inclusive,<br><br>          Defendants. | Case No.: 4:18-cv-02672-JSW<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLMENT**<br><br>**Date: January 17, 2020**<br>**Time: 9:00 a.m.**<br>**Courtroom: 5** |

## TO DEFENDANT ECOLAB INC. AND ITS ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that, on January 17, 2020 at 9:00 a.m., before the Honorable Jeffrey S. White, in Courtroom 5, 2nd floor of the U.S. District Court, Northern

District located in the Oakland Courthouse at 1301 Clay Street, Oakland, California, 94612, or at such other date, time, or place as the Court may designate, Plaintiff Jeff Fuller, will and hereby does move pursuant to Federal Rule of Civil Procedure 23(e) for entry of an Order:

1. To grant final approval to the Settlement Agreement ("Settlement," attached as Exhibit 1 to the Declaration of Dan Palay in Support of Plaintiffs' Motion for Final Approval);

2. To determine that adequate notice was provided to the Settlement Class after the court preliminarily approved the Settlement and notice plan by Order dated August 19, 2019, Docket No. 53;

3. To dismiss with prejudice all claims asserted in the case, as the "Released Claims" are defined in Section VII(A) of the Settlement Agreement (Dan Palay Declaration in Support of Motion for Final Approval of Class Action Settlement, Ex 1, Doc. 46-1); and

4. To retain jurisdiction over the case and the parties to the extent necessary to implement the terms of the Settlement Agreement until each act agreed to be performed by the Parties under the Settlement has been fully performed.

This motion is *unopposed* by Defendants ZEP, INC., a Delaware corporation; and ACUITY SPECIALTY PRODUCTS, INC.

This motion is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Court's Preliminary Approval Order, Docket No. 53. The motion will be based upon this Notice, the Memorandum of Points and Authorities set forth below; the Declarations of Daniel J. Palay, and Emilio Cofinco filed concurrently herewith, the Joint Stipulation of Class Action Settlement and Release filed herein, all of the pleadings, papers, and documents contained in the file of the within action, and such further evidence and argument as may be presented at or before the hearing on the Motion.

This motion is made following the completion of the class notice process whereby the Claims Administrator mailed the Class Notice to all identified Class members and after the deadline for filing objections, December 4, 2019, has passed.

/ / /

/ / /

CAFA notice was sent on July 31, 2019 (Emilio Cofinco, 4.)

Dated:  December 13, 2019        HATHAWAY, PERRETT, WEBSTER, POWERS,
                                 CHRISMAN & GUTIERREZ, APC

                          By      */s/ Alejandro P. Gutierrez*_____
                                  ALEJANDRO P. GUTIERREZ
                                  Attorneys for Plaintiffs and the Certified Class

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. iii

I.   Introduction ....................................................................................................... 1

II.  Issues to Be Decided ......................................................................................... 1

III. Statement of Facts.............................................................................................. 1

IV.  Notice of Proposed Class Action Settlement Mailing ...................................... 3

V.   Summary of Settlement ..................................................................................... 5

     A.  Settlement Terms ........................................................................................ 5

          1.  Settlement Class Members ................................................................... 5

          2.  The Settlement Amount ....................................................................... 5

          3.  Net Settlement Amount ....................................................................... 6

          4.  Class Counsel Fees and Costs.............................................................. 6

          5.  Incentive Award to Named Plaintiff.................................................... 6

          6.  Settlement Shares................................................................................. 6

          7.  Unclaimed Funds Escheat to State Controller's Unclaimed Property Fund ....... 7

VI.  ARGUMENT...................................................................................................... 7

     A.  The Settlement Meets Criteria for Final Approval .................................... 7

     B.  The Strength of Plaintiff's Case Supports Final Approval ........................ 8

     C.  The Complexity, Expense, and Likely Duration of Further litigation Support Final Approval ....... 9

     D.  The Risk of Obtaining Class Action Status Supports Final Approval .............. 10

     E.  The Amount Offered in Settlement Supports Final Approval ........................... 10

     F.  The Extent of Discovery Completed and the State of Proceedings Support Final Approval ....... 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

G.    The Settlement is the Product of Informed, Arm's-Length Negotiations Conducted by Experienced Counsel with the Assistance of an Experienced Mediator ............ 12

H.    The Experience and Views of Counsel Support Final Award ......................... 13

I.    The Presence of a Governmental Participant ..................................................... 14

J.    The Reaction of the Class Members to the Settlement Supports Final Award. 14

K.    The Court-Approved Notice Plan Comports with Due Process ....................... 15

VIII.    CONCLUSION ....................................................................................................... 17

1

2

3

4

5 **TABLE OF AUTHORITIES**

6 **Cases**

7

8 *Barcia v. Contain-A-Way, Inc.*
   2009 WL 587844 (S.D.Cal. March 6, 2009) ............................................................... 15

9

10 *Boyd v. Bechtel Corp.*
    485 F.Supp. 610 (N.D.Cal. 1979) ................................................................................. 14

11

12 *Burns v. Elrod*
    757 F.2d 151 (7th Cir. 1985) ....................................................................................... 15

13

14 *Cannon v. Tex. Gulf Sulphur Co.*
    55 F.R.D. 308 (S.D.N.Y. 1972) ................................................................................... 14

15

16 *Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) ....................................................................................... 7

17

18 *Chun-Hoon v. McKee Foods Corp.*
    716 F. Supp. 2d 848 (N.D. Cal. 2010) ........................................................................... 9

19

20 *Churchill Vill., LLC. v. Gen. Elec.*
    361 F.3d 566 (9th Cir. 2004) .................................................................................... 7, 15

21 *Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974)..................................................................................................... 15

22

23 *Garner v. State Farm Mut. Auto.Ins. Co.*
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......................................................... 8, 14

24

25 *Hanlon v. Chrysler Corp.*
    150 F.3d 1011(9th Cir. 1998) .................................................................................... 8, 12

26

27 *In re Omnivision Tech, Inc.*
    559 F.Supp.2d 1036 (N.D.Cal. 2008) ..................................................................... 14, 15

28

*Officers for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir.1982) ........................................................ 8, 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D.Cal. 2004) ...................................................... 15

*Rodriguez v. West Publishing Corp.*
    563 F.3d 948 (9th Cir. 2009) ................................................ 8, 11, 12

*Torrisi v. Tucson Elec. Power Co.*
    8 F.3d 1370 (9th Cir. 1993) .......................................................... 17

*Williams v. Vukovich*
    720 F.2d 909 (6th Cir. 1983) ........................................................ 12

*Wren v. RGIS Inventory Specialists*
    2011 WL 1230826 (N.D.Cal. April 1, 2011) ................................... 10

**Federal Statutes**

28 U.S.C. § 1715 ............................................................................ 3, 14

Federal Rule of Civil Procedure 23(e) ........................................... *passim*

**Other Authorities**

Manual for Complex Litigation .............................................. 8, 12, 17

2 Newberg on Class Actions ....................................................... 12, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  INTRODUCTION

By Order dated August 19, 2019, this Court granted preliminary approval to the Class Action Settlement that Plaintiff Jeff Fuller, on behalf of himself and the Putative Class ("Plaintiffs") reached with Defendants ZEP, INC., a Delaware corporation; and ACUITY SPECIALTY PRODUCTS, INC. ("ZEP") (collectively, "the Parties").    Notice of the Settlement was provided to the Class, in response to which no Class Member objected to the Settlement.  Plaintiff now seeks final approval of the Settlement.  Plaintiff respectfully submits that the Settlement is fair, adequate, reasonable, and in the best interests of the Putative Class as a whole – as confirmed by the widespread support the Class Members have shown for the Settlement.

The Settlement is a fair and reasonable resolution of the Class claims against ZEP, in light of the financial terms of the settlement and the substantial risks and lengthy delay Plaintiff and Class Members would have faced if this matter had proceeded to trial and a likely appeal.

Accordingly, pursuant to Federal Rule of Civil Procedure 23(e), Plaintiff respectfully requests that the Court (1) grant final approval to the Settlement; (2) direct the parties to perform their obligations as set out in the Settlement; (3) dismiss with prejudice all "Released Claims," as that term is defined in Section VII(A) of the Settlement Agreement; and (4) retain jurisdiction to the extent necessary to implement the terms of the Settlement until each act to be performed by the Parties under the Settlement has been performed.

## II. ISSUES TO BE DECIDED

Whether the Court should grant final approval of the Class Action Settlement after preliminarily approving the same on August 19, 2019.

## III.    STATEMENT OF FACTS

On May 8, 2018, Plaintiff Jeff Fuller filed a class action lawsuit against Defendant ZEP. Plaintiff and the Settlement Class Members work/ed as commission-only outside salespersons in the United States of America, between the dates of May 7, 2014 and August 19, 2019 for ZEP.  ZEP is in the business of offering various cleaning and chemical solutions for retail, food & beverage, industrial & institutional, and vehicle care customers. In this action, the Plaintiffs allege, *inter alia*, that Defendants violated California state wage and hour laws, and

generally applicable principles of contract law (including the duty of good faith and fair dealing), with regard to the payment of commission and the taking of accounts from Class Members. (Palay Decl., ¶ 5). Specifically, Plaintiffs allege that Defendants unlawfully took accounts from its commission sales representatives in violation of both the law and in violation of its contracts with the Class. (*Id.* at ¶ 5). The Defendants have denied Plaintiffs' allegations. (Dkt. No. 7).

The parties first attended private mediation, presided over by Steven J. Rottman, on November 20, 2018. Thereafter, the Parties continued negotiating. A further in-person meeting between the Parties and all counsel was conducted on February 14, 2019 in Los Angeles. Thereafter, a second mediation session with Mr. Rottman took place on April 1, 2019. A memorandum of understanding was executed at the second (final) meeting, and the Parties completed a long-form Joint Stipulation of Settlement thereafter. (Exhibit 1 to the Palay Declaration) (the "Settlement" or "Joint Stipulation"). All negotiations were conducted at arm's length and were facilitated by the highly experienced and esteemed employment mediator, Steven J. Rottman. The Parties agreed to the Settlement only after protracted negotiations over the span of several months, from November 2018 through April of 2019. (Palay Decl., ¶ 8-10).

On June 19, 2019, the parties executed a formal Joint Stipulation of Class Action Settlement and Release ("Settlement") setting forth the terms agreed to in settlement discussions. The Settlement was filed with the Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dck.46-1, Declaration of Daniel Palay In Support of Motion for Preliminary Approval of Class Action Settlement, Exhibit 1).

On August 19, 2019, the Court granted the Motion for Preliminary Approval of Class Action Settlement (Dck. 53), preliminarily finding that the Settlement is the product of serious, informed, non-collusive negotiations conducted at arm's-length by the Parties. In its Order, the Court approved the manner of the notice of Settlement and the size and the Notice of Proposed Class Action Settlement as revised August 12, 2019. (Dkt. 53, ¶ 3).

The Court also appointed CPT Group, Inc. ("CPT") as the Claims Administrator to prepare the final version of the Notice of Proposed Class Action Settlement Commission and Dispute Form, incorporating relevant dates and deadlines set forth in the August 19, 2019

Order and the Settlement Agreement and to commence the notice process in accordance with the scheduling set forth in the Order. (Dck. 53 ¶ 7). The Court's Order provides that CPT mail the Notice of Proposed Class Action Settlement Commission and Dispute Form by no later than October 5, 2019.

The Court's August 19, 2019 Order also set other deadlines, including the last day for Class Members to object to the Settlement, December 4, 2019 (and no earlier than sixty days after actual mailing of notice). (Dck. 53, ¶ 12).

## IV. <u>NOTICE OF PROPOSED CLASS ACTION SETTLEMENT MAILING</u>

On July 29, 2019, counsel for Defendants provided CPT with a list of Settlement Class Members ("Class List"). The Class List included (a) each Settlement Class Member's name, (b) last-known mailing address, (c) monetary amount of commissions earned from accounts reassigned by Defendants for the period of March 2017 through March 2019 (the "Commission Measuring Period"), (d) and account names and numbers that were reassigned from Defendant as part of its new account policy during the Claims Period. The Class List contained 289 Settlement Class Members. (*see* Emilio Cofinco Declaration, ¶ 3)

On July 31, 2019, CPT, on behalf of Defendant, mailed a notice of proposed settlement pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715 ("CAFA Notice") to the Attorney General of the United States and the Attorney General of any state where a Class Member resides. The CAFA Notice was sent to 45 State Attorney Generals and the Attorney General of the United States. (*see* Cofinco Decl. ¶ 4, Exhibit "A").

CPT received the Court-approved text for the Notice Packet from Class Counsel on August 20, 2019.  CPT finalized an 8-page *Notice of Proposed Class Action Settlement and Fairness Hearing*, a 2-page *Dispute Form*, and a 1-page *Account Take by Customer Number Form*. CPT received written approval from all parties and a sufficient number were printed to mail to all Settlement Class Members. (*see* Cofinco Decl. ¶ 4, Exhibit "B")

On September 30, 2019, CPT conducted a National Change of Address (NCOA) search in an attempt to update the Settlement Class Members' addresses as accurately as possible. A search of this database provides updated addresses for any individual who has moved in the previous four years and has notified the U.S.  Postal Service of his or her change of address.  As a result of the NCOA search, CPT was able to locate 14 new addresses. (*see* Cofinco Decl. ¶ 7)

The Notice Packets were enclosed in envelopes with the individual Settlement Class Member's name and last-known address visible on the envelope. On October 4, 2019, the Notice Packets were mailed via U.S. first class mail to all 289 Settlement Class Members. The deadline for Settlement Class Members to submit a dispute, request for exclusion, or objection to the settlement was December 4, 2019. (*see* Cofinco Decl. ¶ 8)

On October 21, 2019, CPT mailed via U.S. first class mail to all 289 Settlement Class Members a Corrective Notice. It was discovered that the revenue amount merged on the Dispute Form was incorrect. The incorrect revenue amount did not affect the estimated settlement payment. (*see* Cofinco Decl. ¶ 8, Exhibit "C")

As of December 13, 2019, 3 Notice Packets have been returned to the CPT office by the Post Office. CPT performed a skip-trace to locate a better address using Accurint, one of the most comprehensive address databases available. Accurint utilizes hundreds of different databases supplied by credit reporting agencies, public records and a variety of other national databases. (*see* Cofinco Decl. ¶ 10)

As a result of either a skip trace, request from counsel or the Settlement Class Member, a total of 5 Notice Packets have been re-mailed to date. Ultimately, 1 Notice Packet remains undeliverable with no forwarding address, where no new addresses could be found through skip trace. (*see* Cofinco Decl. ¶ 11)

As of December 13, 2019, CPT has not received any objections to the settlement.  (*see* Cofinco Decl. ¶ 12)

As of December 13, 2019, CPT has received 14 disputes, all of which are not valid. Of the 14 disputes, seven (7) did not provide an explanation of the of the dispute or supporting documentation. A deficiency notice was sent requesting an explanation of the dispute and supporting documentation.  As to the other seven (7) disputes, three (3) were claiming commission value that was lower than the commission value used to calculate their pro rata Individual Settlement Amount and four (4) were not disputing the reassigned account data used to calculate the pro rata Individual Settlement Amount. (*See* Cofinco Decl. ¶ 13)

As of December 13, 2019, CPT has not received any requests for exclusion from the settlement. (*see* Cofinco Decl. ¶ 14)

Therefore, CPT reports a total of 289 participating Settlement Class Members will be sent an

individual settlement payment, which represents 100% participation rate.  The highest individual settlement payment is approximately $22,501.07 and the average individual settlement payment is approximately $3,065.74. (*See* Cofinco Decl. ¶ 15)

CPT's charged for services rendered to perform its duties and responsibilities pursuant to the terms of the settlement is $19,000. This includes all costs incurred to date, as well as estimated costs for completing the administration and disbursement of the settlement. (*See* Cofinco Decl. ¶ 16).

## V.  SUMMARY OF THE SETTLEMENT

### A.  Settlement Terms.

The terms of the Settlement are set forth in the Joint Stipulation of Class Action Settlement and Release attached as Exhibit 1 to the Declaration Daniel Palay in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, which the Court granted on August 19, 2019 (Dkt. 53), which are incorporated herein by reference.  The principal settlement terms are:

### 1.  Settlement Class Members

The Settlement Class consists of: All persons who work or worked for the Defendants as commission-only outside salespersons in the United States of America, between the dates of May 7, 2014 and the present and who were responsible for one or more of the accounts that were reassigned between April — September 2018 (pursuant to the "2018 New Account Policy").  Within the Settlement Class is a California-based employee subclass (the "California Subclass"), which is defined in the Settlement as "[a]ll persons who are members of the National Settlement Class and who work or worked for the Defendants in the State of California between the dates of May 7, 2014 and the present."  (Settlement, at § I, ¶ Q(1) & (2)).

### 2.  The Settlement Amount

Under the terms of the Settlement, Defendants agree to pay a lump-sum non-reversionary payment of $1,500,000.  This Settlement Amount is inclusive of all payments to Class Members under the terms of the Settlement; PAGA-designated penalties in the total amount of $20,000; Class Counsel fees up to 35% of the Gross Settlement Amount and expenses not to exceed $20,000, the Class Representative Incentive Award up to $55,000, claims administration costs of $12,500, and all federal, state and local taxes.  In addition to the

Gross Settlement Amount, ZEP agrees to pay the employer's share of any taxes owed for wages paid to the Class Members (employer's share of FICA).  (Settlement, § XV).

Further, the Settlement provides additional benefits to the Settlement Class in the form of the payment of ongoing residuals to Settlement Class Members, in the form of protection of customer accounts belonging to Settlement Class Members, and also in the form of the implementation of several new sales programs to benefit the Settlement Class Members. These additional, bargained-for settlement terms are in addition to the initial Settlement Amount described above.

### 3.  Net Settlement Amount

After deducting the Class Counsel fees and expenses, the Class Representative incentive awards, the LWDA payment, and the class administration expenses, the remainder of the Gross Maximum Settlement Amount (the "Net Settlement Amount") will be divided and distributed to Class Members.  (Settlement, §§ I.(K), (L); X).

### 4.  Class Counsel Fees and Costs

Defendants do not object to an award of attorneys' fees to Class not to exceed 35% of the Settlement Amount, or $525,000.00, and actual litigation costs incurred up to $20,000. (Settlement, § XIII).  Class Counsel will present the rationale and facts supporting their fee request in their final fee motion.

### 5.  Incentive Award to Named Plaintiff

Concurrently with the filing of this Motion, Plaintiff Fuller has filed a Motion for Class Representative Incentive Award, wherein he seeks an incentive award of $35,000 in recognition of his significant time, effort, travel and advocacy in this matter on behalf of the Settlement Class.  Defendants will not object to the requested incentive award to Mr. Fuller up to the amount of $35,000.  The settlement of this Action is, of not course, contingent on the Named Plaintiff's receipt of any specific incentive award amount out of the Maximum Settlement Amount; any unapproved portion shall revert into the Net Settlement Amount to be distributed between the participating Settlement Class Members on a pro-rata basis. (Settlement, § XIV).

### 6.  Settlement Shares

Each Class Member will be entitled to receive a portion of the Net Settlement

Amount determined by converting the Net Settlement Amount into individualized payments. The Claims Administrator will receive data from Defendants following preliminary approval, identifying the total amount of commissions attributable to all accounts that were reassigned from Class Members by Defendants as part of its 2018 New Account Policy, for the Commission Measuring Period (monetary amount of commissions earned from accounts reassigned by Defendants for the period of March 2017 through March 2019), which shall be the "Total Reassigned Commission Value."  In addition, Defendant shall provide data which identifies on an individual basis which of these commissions are attributable to each Settlement Class Member, based on how the accounts were previously aligned (the "Individual Commission Value").

An "Individual Settlement Payment" for each Class Member will then be calculated by determining the Settlement Class Member's fraction of the Net Settlement Fund, which shall be the Individual Commission Value for each class member divided by the Total Reassigned Commission Value (*i.e.,* pro rata based on the actual commission loss allegedly sustained by each Settlement Class Member).   For example: If the data show that the reassigned accounts formerly aligned to the individual (*i.e.,* the Individual Commission Value) had earned $5,000.00 during the Commission Measuring Period, and the Total Reassigned Commission Value is $650,000, and the Net Settlement Fund for the class was $1,000,000.00, that individual would receive [$5,000]÷[$650,000]×[$1,000,000], or $7,692.31, as his or her Individual Settlement Payment.

**7.  Unclaimed Funds Escheat to State Controller's Unclaimed Property Fund**.

The Settlement does not include any *cy pres* awardee.  Instead, any check not cashed within 180 calendar days will be void.  Within 30 days after the check stale date, the money from the uncashed checks will escheat to the State of California Controller's Unclaimed Property fund, in the name of the Class Member.  (Settlement, § XI.(D)).

**VII.   ARGUMENT**

**A.  The Settlement Meets Criteria for Final Approval**

Judicial policy strongly favors settlement, particularly in complex class actions. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Churchill Vill., LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). It is within the trial court's sound discretion

whether to approve settlements in the class actions before it. *Hanlon v. Chrysler Corp.*, 150 F.3d1011, 1026 (9th Cir. 1998). In determining final approval, the court's inquiry is whether the settlement is "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(2). A class action settlement meets this standard when "the interests of the class are better served by the settlement than by further litigation." Manual for Complex Litigation (Fourth) § 21.61 (2004). Courts will generally not intrude into the private consensual agreement negotiated between the parties except to ensure that the settlement "is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Garner v. State Farm Mut. Auto.Ins. Co.*, 2010 WL 1687832 at *8 (N.D. Cal. Apr. 22, 2010) (citing *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir.1982)). In deciding whether a class action settlement is fair, adequate, and reasonable, courts in the Ninth Circuit consider the following factors:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2009).

**B. The Strength of Plaintiff's Case Supports Final Approval**

The first fairness factor addresses Plaintiffs' likelihood of success on the merits and the range of possible recovery. *Rodriguez,* 563 F.3d at 964 – 965. In determining the probability of Plaintiffs' success on the merits, there is no "particular formula by which that outcome must be tested." *Id.* at 965. Rather, the Court's assessment of the likelihood of success is "nothing more than an 'amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice,* 688 F.2d at 625. Nor, at this stage, need the Court "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* Instead, the Court may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *Garner v. State Farm Mut. Auto Ins. Co.,* 2010 WL 1687832 at *9 (citing *Rodriguez*, 563 F.3d at 965). This factor is generally satisfied when

plaintiffs must overcome barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Here, although Plaintiff believes he would ultimately prevail if this case were litigated through trial, he nonetheless recognized the risks and delay of further litigation. The novel factual and legal questions that would arise in the anticipated cross-motions for summary judgment and eventually at trial highlight the risk of continued litigation. Throughout the pendency of the case, ZEP has maintained that it legitimately modified its outside-sales employees' compensation plans when it moved accounts in-house and that the modifications do not result in wage and hour violations and/or breach of the covenant of good faith and fair dealing. (Dkt. 38). Although Plaintiff believes he would win this dispute, he faced a risk that ZEP would convince the Court otherwise. Also, ZEP had an argument to defend itself from Plaintiff's claims based on a lack of personal jurisdiction over Plaintiff's nationwide or multi-state claims. (Dkt. 32-1).

If ZEP had been successful in an appeal of a final judgment, Plaintiffs would have been without a remedy. (Palay Decl., ¶ 23). Even assuming the appeal was decided in Plaintiffs' favor, the class would not have received any compensation from this case until such appeal was exhausted. Therefore, Plaintiff and the class would have faced substantial risk in proceeding with the litigation had a settlement not been reached.

Given the risks faced by Plaintiffs, the Settlement represents an excellent resolution. The Settlement mitigates the risk to both the Plaintiffs and ZEP by fixing the settlement amount figure at a probable best outcome for Plaintiffs. Even years of litigation would be unlikely to yield a better result. Accordingly, this factor favors approval of the proposed Settlement.

## C. The Complexity, Expense, and Likely Duration of Further Litigation Support Approval

This Settlement allows the Class to avoid the complexity, delay, and expense of continuing with the litigation and instead provides a considerable and concrete recovery for the Class. The Parties entered into the Settlement before dispositive motions and before a jury trial related to damages. As stated, although Plaintiff believes he would have ultimately prevailed if this case were litigated through trial, he nonetheless recognizes the risks and delay

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

of further litigation.  ZEP has maintained that Plaintiff and the class could never get the claims certified and could never prove class-wide liability and damages because the vast majority of members of the Class did not live in California, did not work in California, did not enter into contracts in California (nor do those contracts specify application of California law), and therefore, no one of them suffered any alleged injury in California. Again, had ZEP's appeal been successful, Plaintiffs could have lost everything.  (Palay Decl., ¶ 22).

Further, had the case proceeded to trial Plaintiff and the Class still faced numerous obstacles to recovery, including challenges to certification, statistical sampling, challenges to their expert witnesses and to damages calculations and pursuing their claims against skilled defense attorneys who have significant trial experience in similar cases.  The time and expense associated with trial preparation would mount, as the parties would have to complete depositions of trial witnesses, prepare and defend against motions *in limine* and *Daubert* motions, draft trial briefs, prepare trial exhibits, appear for pre-trial conferences, and ultimately, try the case to a jury. (Palay Decl., ¶ 23).  *See Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 at *7 (N.D.Cal. April 1, 2011) (mounting time and expenses associated with trial preparation and potential appeals supported approval of settlement).

Because the Settlement offers Class Members a certain recovery rather than further, uncertain, and costly litigation, this fairness factor favors approval.

### D.  The Risk of Obtaining Class Action Status Supports Final Approval

Throughout the case, ZEP has maintained that there was a wide variation among the law applicable to Plaintiff's putative class based on the fact it is comprised almost entirely of non-Californians seeking to bring claims against non-resident Defendants in a forum state that has no nexus to their claims, all of which arise under the laws of either their home states or the state of Georgia where ZEP is headquartered. (Dkt. 32-1, Motion to Dismiss) While a district court may certify the class at any time upon a proper showing, Plaintiff and the Class faced the risk that ZEP would have opposed certification of the class and/or appealed certification if there were a final, adverse judgment.  At the time of the Settlement, the risk remained that the class might not be certified.  This factor weighs in favor of settlement.

### E.  The Amount Offered in Settlement Supports Final Approval

Each Class Member will be entitled to receive a portion of the Net Settlement Amount,

determined by converting the Net Settlement Amount into individualized payments.  The Claims Administrator will receive data from Defendants following preliminary approval, identifying the total amount of commissions attributable to all accounts that were reassigned from Class Members by Defendants as part of its 2018 New Account Policy, for the Commission Measuring Period (monetary amount of commissions earned from accounts reassigned by Defendants for the period of March 2017 through March 2019), which shall be the "Total Reassigned Commission Value."  In addition, Defendants shall provide data which identifies on an individual basis which of these commissions are attributable to each Settlement Class Member, based on how the accounts were previously aligned (the "Individual Commission Value").

An "Individual Settlement Payment" for each Class Member will then be calculated by determining the Settlement Class Member's fraction of the Net Settlement Fund, which shall be the Individual Commission Value for each class member divided by the Total Reassigned Commission Value (*i.e.,* pro rata based on the actual commission loss allegedly sustained by each Settlement Class Member).  <u>*For example*</u>: If the data show that the reassigned accounts formerly aligned to the individual (*i.e.,* the Individual Commission Value) had earned $5,000.00 during the Commission Measuring Period, and the Total Reassigned Commission Value is $650,000, and the Net Settlement Fund for the class was $1,000,000.00, that individual would receive [$5,000] ÷ [$650,000] × [$1,000,000], or $7,692.31, as his or her Individual Settlement Payment.

As such, because the Settlement provides substantial relief to the Class while avoiding the expense and uncertainty of continued litigation, this factor shows that the Settlement is fair, reasonable, and adequate.

## F. The Extent of Discovery Completed and the State of Proceedings Support Final Approval

As shown, by the time of the parties participated in the two mediation sessions, the Parties had conducted extensive discussions and an exchange of detailed information and class data.  Sales and revenue data, on a granular, employee account-specific basis, were reviewed and analyzed, which provided Counsel with a "good grasp on the merits of their case before settlement talks began." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir.

2009); (Palay Decl., ¶ 13). As such, this factor weighs in favor of approving the Settlement.

### G. The Settlement is the Product of Informed, Arm's-Length Negotiations Conducted by Experienced Counsel with the Assistance of an Experienced Mediator

The Ninth Circuit has shown longstanding support of settlements reached through arms' length negotiation by capable opponents. In *Rodriguez, supra,* 563 F.3d 948, the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965 (citing *Hanlon*, 150 F.3d at 1027). The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Id.* at 965 (quoting *Officers for Justice*, 688 F.2d at 625).  The *Rodriguez* court "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (citations omitted). As the *Rodriguez* court explained, "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id.* (citations omitted). *See also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); 2 Newberg on Class Actions §11.24 (4th Ed. & Supp. 2002); *Manual for Complex Litigation*, Fourth, §30.42 (2002).

The proposed Settlement here was the product of over a year of preparation and arm's-length negotiations between the parties. Plaintiffs conducted significant investigation of the facts and law during the prosecution of this action, including extensive review and analysis of critical documents, and a comprehensive analysis of the employment data obtained for

purposes of damages models. (Palay Decl., ¶¶ 12-13).

Plaintiffs' counsel considered the strengths and weaknesses of their case and of ZEP's defenses. Considerable effort has been put forth to analyze the law as it would apply to the facts of this matter, including the Plaintiff's claim that ZEP illegally modified its outside-employees' compensation plans and unilaterally moved employee commission accounts in-house, causing employees to lose commissions. (Palay Decl., ¶ 20). This Settlement in this case provides for the monetary recovery to Settlement Class Members, over time, that is roughly 6X the value of the alleged wrongfully taken commissions, plus another 50% of the value indefinitely thereafter (so long as employed).  (Palay Decl., ¶19).

The Settlement represents nearly all, if not all, of the potential damages and interest that the class may have recovered. *Id.*

Plaintiffs have also taken into account the uncertainty and risk of the outcome of further litigation and the difficulties and delays inherent in such litigation. Plaintiffs are also aware of the burdens of proof necessary to establish the amount of damages for the Class Members given that so-called "trials by formula" are discouraged, not to mention the strong likelihood that ZEP would appeal the Court's decision.

In its August 19, 2019 Order Granting Preliminary Approval of the Class Action Settlement, the Court found that the Settlement is the product of "serious, informed, non-collusive negotiations conducted at arm's-length by the Parties."  In making such finding, the Court considered, among other factors,  the potential damages claimed in the lawsuit, Defendant's potential liability, the risks of continued litigation including trial outcome, delay and potential appeals, the substantial benefits available to the Certified Class as a result of the Settlement, the Parties' participation in multiple mediations with an experienced class action mediator, and the fact that the proposed Settlement represents a compromise of the Parties' respective positions rather than the result of a finding of liability at trial.  Docket No. 53.

As this Court properly held in its Preliminary Approval Order, the Settlement is "fair, adequate and reasonable."  *Id.*, pg. 1, ¶ 1.  Accordingly, final approval should be granted.

**H. The Experience and Views of Counsel Support Final Award**

Finally, the fact that the lawyers for both Plaintiff and ZEP – who have all litigated this case for over one year – support the Settlement weighs in favor of final approval.  *See*

Newberg § 11.47 at p. 148 (citing *Cannon v. Tex. Gulf Sulphur Co.*, 55 F.R.D. 308 (S.D.N.Y. 1972 ("The court should give great weight to the fact that the lawyers for substantially all of the plaintiffs and defendants who have been engaged in this arduous litigation for seven years unanimously support the settlement")).    The Settlement was reached after considerable negotiations and involving the mediation efforts and expertise of a highly experienced mediator. Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this Settlement represents a responsible means of addressing the claims of Plaintiffs, and the defenses of Defendant. (Palay Decl., ¶¶ 8 – 14).

As demonstrated in their declarations, Class Counsel have extensive experience in the litigation, certification, trial and settlement of complex wage and hour class action cases. Gutierrez Decl., ¶¶ 23; Palay Decl. ¶ 12; and Hefelfinger Decl., ¶ 12-14 in support of Motion for Attorney Fees (Dkt. 54). In general, the "recommendations of plaintiffs' counsel should be given a presumption of reasonableness" by the courts." *In re Omnivision Tech, Inc.*, 559 F.Supp.2d 1036, 1043 (N.D.Cal. 2008) (citing *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D.Cal. 1979)).  In negotiating the Settlement, Class Counsel benefitted from their years of experience along with their intimate knowledge of the factual and legal issues in this case.

This factor also weighs in favor of granting final approval of the Settlement.

## I.  The Presence of a Governmental Participant

Though there is no governmental participant involved in the case, pursuant to 28 U.S.C. § 1715 of the Class Action Fairness Act (CAFA), ZEP provided notice of the Settlement to the Office of the Attorney General for the United States and the Office of the Attorney General for the State of California.   (Emilio Cofinco Decl., ¶ 4, Ex. A).

The courts have noted that "[a]lthough CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner*, 2010 WL 1687832 at *14.

## J. The Reaction of the Class Members to the Settlement Supports Final Approval

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement

14

1    action are favorable to the class members." *In re Omnivision*, 599 F.Supp.2d at 1043, citing

2    *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D.Cal. 2004).

3    Here, after this Court's Preliminary Approval Order, the Parties implemented the Court-

4    approved Notice Plan.  As stated, under the terms of the Settlement, the 289 Settlement Class

5    Members had until December 4, 2019 to object to the Settlement.  As of December 13, 2019,

6    zero Class Members submitted any objection to the Settlement.  (Cofinco Decl., ¶ 12).  Where,

7    as here, no Class Members objected to the Settlement, courts infer that the settlement is fair,

8    reasonable, and adequate.  *Barcia v. Contain-A-Way, Inc.*, 2009 WL 587844, at *4 (S.D.Cal.

9    March 6, 2009) (absence of objectors "strongly supports the fairness, reasonableness, and

10   adequacy of settlement.").  As such the overwhelmingly positive response of Class Members

     and the absence of objectors favors final approval.

11       Overall, all of the fairness factors favor final approval of the Settlement.  Given the

12   risks and costs associated with future litigation and appeals, this Settlement, which resulted

13   from arm's-length negotiations between experienced attorneys and facilitated by an

14   experienced mediator, warrants final approval.

15       **K. The Court-Approved Notice Plan Comports with Due Process**

16       Under Rule 23(e), the Court "must direct notice in a reasonable manner to all Class

17   Members who would be bound by a propos[ed settlement]." Fed. R. Civ. P. 23(e)(1).  Class

18   Members are entitled to receive the "best notice practicable" under the circumstances.  *Burns*

19   *v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985). Notice is satisfactory "if it generally describes the

20   terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

21   and to come forward and be heard." *Churchill Vill., L.L.C.*, 361 F.3d 566, 575 (9th Cir. 2004)

22   (internal citations omitted). Moreover, notice that is mailed to each member of a settlement

23   class "who can be identified with reasonable effort" constitutes reasonable notice. *Eisen v.*

     *Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).

24       Here, the Notice approved by the Court met the requirements for the "best practicable

25   notice necessary to protect the due process rights of class members.  In its August 19, 2019

26   Order Granting Motion for Preliminary Approval of Class Action Settlement, the Court

27   approved the manner of the notice of Settlement as set forth in the Settlement Agreement.

28   (Dkt. No. 53, ¶ 3). Pursuant to the terms of the Settlement, Ecolab provided the Claims

Administrator updated contact information for the 262 Class Members including last known addresses and telephone numbers. (Dkt. No. 60, ¶¶ 4-5). The Court appointed CPT Group, Inc. as the Claims Administrator. (Dkt. No. 53 at ¶ 7). The Court instructed CPT Group to prepare a final version of the Notice of Proposed Class Action Settlement, incorporating into it the relevant dates and deadlines set forth in its Order and the Settlement Agreement. *Id.* The Court instructed CPT Group to commence the notice process in accordance with the scheduling set forth in the Settlement. (Dkt. No. 53, ¶ 12).

The deadline appointed by the Court for filing objections to the Settlement was December 4, 2019. (Dkt. No. 53, ¶ 12). The Parties have now fully implemented the Court-approved Notice Plan. On July 29, 2019, CPT Group received the list of Class Member names and addresses compiled by ZEP. The Class List included (a) each Settlement Class Member's name, (b) last-known mailing address, (c) monetary amount of commissions earned from accounts reassigned by Defendants for the period of March 2017 through March 2019 (the "Commission Measuring Period"), (d) and account names and numbers that were reassigned from Defendant as part of its new account policy during the Claims Period. The Class List contained 289 Settlement Class Members. On September 30, 2019, CPT updated the address list using the National Change of Address system. A search of this database provides updated addresses for any individual who has moved in the previous four years and has notified the U.S. Postal Service of his or her change of address. As a result of the NCOA search, CPT was able to locate 14 new addresses. (Cofinco Decl., ¶ 7).

CPT finalized an 8-page *Notice of Proposed Class Action Settlement and Fairness Hearing*, a 2-page *Dispute Form*, and a 1-page *Account Take by Customer Number Form ("Notice Packet")*. CPT received written approval from all parties and a sufficient number of Notice Packets were printed to mail to all Settlement Class Members. (Cofinco Decl., ¶ 6, Exhibit "B").

On October 4, 2019, CPT mailed the Class Notice and individualized estimates of settlement payments to the 289 Class Members by First Class mail. (Cofinco Decl. ¶ 8). The deadline for Settlement Class Members to submit a dispute, request for exclusion, or objection to the settlement was December 4, 2019. (Dckt. 53, ¶ 12).

As of the December 4, 2019 deadline for objections, not a single Class Member

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

submitted any objection to the Settlement and no Class Member submitted a request for exclusion from the settlement. (Cofinco Decl. ¶ 12-14). Accordingly, the Notice and Notice plan fulfilled all requirements of adequate notice and should be duly approved. See *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1374-75 (9th Cir. 1993); Fed. R. Civ. P. 23(C)(2); Manual for Complex Litig. (4th), § 21.312.

## VIII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval of the Class Action Settlement.

Respectfully submitted,

Dated:    December 13, 2019    HATHAWAY, PERRETT, WEBSTER, POWERS, CHRISMAN & GUTIERREZ, APC


*/s/ Alejandro P. Gutierrez*

By: ALEJANDRO P. GUTIERREZ
Attorneys for Plaintiffs and Certified Class

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** –4:18-cv-02672-JSW